**FILED**

APR 1 2 2010

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
---------------------------------------------------------------x
----
MCI COMMUNICATIONS SERVICES, INC.          :
d/b/a VERIZON BUSINESS SERVICES, for itself :
and certain of its affiliates,             :
22001 Loudoun County Parkway               :      Civil Action No.
Ashburn, Virginia 20147                    :
```

Case: 1:10-cv-00579
Assigned To : Roberts, Richard W.
Assign. Date : 4/12/2010
Description: General Civil

```
                         Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE                  :
CORPORATION, in its capacity as Receiver for :
Washington Mutual Bank,                    :
550 17th Street NW                         :
Washington, DC 20429                       :
                                           :
                         Defendant.        :
                                           :
---------------------------------------------------------
--x
```

## COMPLAINT

Plaintiff MCI Communications Services, Inc. d/b/a Verizon Business Services ("Verizon"), for itself and certain of its affiliates, files this Complaint against Defendant Federal Deposit Insurance Corporation ("FDIC"), in its capacity as the Receiver for Washington Mutual Bank ("WaMu"), in order to appeal and obtain judicial review, pursuant to 12 U.S.C. § 1821(d)(6)(A), of the FDIC's denial of Verizon's duly–filed claims for compensatory damages in the WaMu bank receivership. In support of its Complaint, Verizon shows the Court as follows:

2641735v1

## THE PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Verizon is a corporation duly organized and existing under the laws of the state of Delaware, with its principal place of business located in Ashburn, Virginia.

2.      Defendant FDIC is a United States government corporation that, among other statutory functions, acts as the receiver for insolvent and/or illiquid banks and other depository institutions in the United States, as well as the body that initially conducts an administrative review and either allows or disallows creditors' claims against such institutions.  FDIC may be served with process, pursuant to Fed. R. Civ. P. 4(h), by delivery of copies of the Summons and this Complaint to one of its authorized agents for service of process, including Edward Ostrowski, Supervisory Examiner, Federal Deposit Insurance Corporation, 7740 Shrader Road, Suite F, Richmond, Virginia 23228 and/or Andrea Fulton Toliver, Esq., Regional Counsel, Federal Deposit Insurance Corporation, 10 Tenth Street NE, Suite 800, Atlanta, Georgia 30309-3906.

3.      This Court has jurisdiction over this adversary proceeding pursuant to 12 U.S.C. § 1821(d)(6)(A) and 28 U.S.C. § 1331.

4.      Venue is proper in this Court pursuant to 12 U.S.C. § 1821(d)(6)(A) and 28 U.S.C. § 1409(a).

## BACKGROUND FACTS

5.      Verizon is a telecommunications carrier that, among other things, designs and provides network and communications services, as well as related facilities, support, strategies and management, to large business organizations throughout the United States.

6.      At all relevant times, WaMu was a federal savings and loan association with its principal offices located in Seattle, Washington, and with other offices and banking branches

located throughout the United States.  As of 2008, WaMu was the sixth largest bank in the United States.

7.      Effective as of December 5, 2006, Verizon and WaMu entered into the Second Amended and Restated Master Services Agreement (the "SARA").  The SARA provided the terms and conditions under which Verizon was to provide certain comprehensive communications and related support and management services to WaMu for an initial term of five (5) years, or to and through December 4, 2011.

8.      Following its execution and December 5, 2006 effective date, each of Verizon and WaMu began to perform their respective obligations to one another under the SARA.

9.      On or about September 25, 2008, however, the United States Office of Thrift Supervision ("OTS") seized WaMu from its holding company, Washington Mutual, Inc., and placed WaMu into the receivership of the FDIC (the "Receivership").  FDIC immediately sold substantially all of WaMu's assets to JPMorgan Chase Bank ("JPMC").  WaMu's closure and Receivership was the largest bank failure in American financial history.

10.     As a result of the Purchase and Assumption Agreement between the FDIC and JPMC dated September 25, 2008, Verizon continued to provide services under the SARA over approximately the first nine months of the Receivership.

11.     To the extent that Verizon actually rendered services to JPMC and/or for the use and benefit of the Receivership during this period, Verizon was paid by JPMC.

12.     Ultimately, however, JPMC did not assume the SARA.  By letter dated July 1, 2009, the FDIC, as Receiver for WaMu, provided notice to Verizon that the SARA was repudiated and disaffirmed pursuant to 12 U.S.C. § 1821, effective as of July 1, 2009.

13.     The FDIC's July 1, 2009 letter further directed Verizon to submit any claim for compensatory damages caused by the early repudiation of the SARA, for consideration by the FDIC pursuant to 12 U.S.C. § 1821, within 90 days thereof, or by no later than September 29, 2009.

14.     Verizon did, in fact, sustain actual and direct out-of-pocket damages as a result of the repudiation and disaffirmance of the SARA some two-and-a-half years prior to the end of its term, in direct reliance upon WaMu's commitment to perform over the entire term of the SARA, and over and above the charges for services that Verizon actually rendered to WaMu and then to JPMC under the SARA.  Verizon has never been compensated in any manner for these damages.

15.     Accordingly, on or about August 26, 2009, Verizon timely submitted to the FDIC its claim for actual, compensatory damages sustained as a direct and proximate result of the early repudiation of the SARA, along with a complete copy of the SARA and supporting documentation for each element of the claim.

16.     By letter dated February 11, 2010, the FDIC notified Verizon that the FDIC Receiver had disallowed Verizon's August 26, 2009 claim in its entirety.  The only basis given by the FDIC for the disallowance was the vague, boilerplate assertion that Verizon's claim "[does] not represent actual direct compensatory damages and [has] not been proven to the satisfaction of the Receiver."

17.     Verizon disputes the FDIC Receiver's conclusion that it did not sustain actual compensatory damages, including out-of-pocket losses, as a direct and proximate result of the repudiation of the SARA some two-and-a-half years prior to the end of its term.  Accordingly, this action is filed pursuant to 12 U.S.C. § 1821(d)(6) to obtain judicial review and reversal of

the FDIC's determination, and for an award to Verizon of the direct compensatory damages that it has sustained and is lawfully entitled to recover from the Receivership.

18.     Verizon's claims for compensatory damages arising directly from the early repudiation of the SARA fall into three distinct categories.

**COUNT I:**
**OUT-OF-POCKET COSTS, CAPITAL EXPENDITURES**
**AND FINANCIAL CONCESSIONS**

19.     Verizon incorporates paragraphs 1 through 18 above as though fully set forth herein.

20.     The first element of Verizon's claim is comprised of (i) material and labor costs incurred by Verizon in connection with facilities build-out, data conversion and migration of WaMu to its communications network, in reliance upon WaMu's commitment to purchase services from Verizon and otherwise perform its obligations over the entire five-year term of the SARA; (ii) certain credits against sums owed by WaMu under a prior contract that Verizon granted to WaMu as a material inducement to enter into the SARA and commit to performance over its entire five-year term; and (iii) other out-of-pocket costs, capital expenditures and financial concessions that Verizon incurred in direct reliance upon WaMu's execution of the SARA and in order to perform its obligations thereunder over the entire five-year term.  This element of Verizon's claim totals $21,453,977.43, and is summarized in EXHIBIT A attached hereto and incorporated herein by reference.

21.     The largest component of this Count I relates to $35,000,000.00 in loyalty, service and other credits that granted to WaMu, against sums that were due and payable to Verizon under the prior contract between the parties, as a material inducement for, and in direct reliance

upon, WaMu's execution of the SARA and commitment to its entire five-year term.  After amortization and reduction to reflect that approximately two-and-a-half years of the five-year term were completed prior to the FDIC's repudiation of the SARA, Verizon seeks to recover $19,300,000.00 of these credits.  This component of Count I is further supported by the July 28, 2006 Verizon proposal to WaMu attached as EXHIBIT B hereto, and the October 3, 2006 correspondence from Verizon to WaMu attached as EXHIBIT C hereto, both of which are incorporated herein by reference.

22.     The project labor component of Count I is further supported by the labor detail documentation attached as EXHIBIT D hereto and incorporated herein by reference.  Additional components of Count I, relating to equipment, development, labor, capital and other out-of-pocket expenditures that Verizon incurred in direct reliance upon WaMu's commitment to perform over the entire five-year term of the SARA, are further supported by the summaries attached as EXHIBIT E and EXHIBIT F hereto and incorporated herein by reference.  These components of Count I also have been amortized and reduced to reflect that approximately two-and-a-half years of the five-year term were completed prior to the FDIC's repudiation of the SARA.

23.     All of the components of Verizon's claim set forth in this Count I and supported by Exhibits A though F hereto are "actual direct compensatory damages" that Verizon sustained as a result of the early repudiation of the SARA, as opposed to "punitive or exemplary damages" or "damages for lost profits or opportunity" excluded from recovery under 12 U.S.C. § 1821(e)(3)(B), and as such are allowable and recoverable by Verizon pursuant to 12 U.S.C. § 1821(e)(3)(A).

## COUNT II:

24.     Verizon incorporates paragraphs 1 through 23 above as though fully set forth herein.

25.     The second element of Verizon's claim is comprised of severance liability, outplacements costs and continuation of COBRA benefits that Verizon has incurred or will incur in connection with employees it hired in direct reliance upon WaMu's execution of the SARA and commitment to its entire five-year term, and specifically in order to service the SARA and perform all of its obligations thereunder, most of which were specifically required by WaMu but then terminated two-and-a half years early as a result of the repudiation of the SARA as of July 1, 2009.

26.     The claim set forth in this Count II totals $2,832,000.00, and is supported by the summary of Verizon's associated human resources costs attached as EXHIBIT G hereto and incorporated herein by reference.

27.     All of the components of Verizon's claim set forth in this Count II and supported by Exhibit G hereto are "actual direct compensatory damages" that Verizon sustained as a result of the early repudiation of the SARA, as opposed to "punitive or exemplary damages" or "damages for lost profits or opportunity" excluded from recovery under 12 U.S.C. § 1821(e)(3)(B), and as such are allowable and recoverable by Verizon pursuant to 12 U.S.C. § 1821(e)(3)(A).

## COUNT III:

28.     Verizon incorporates paragraphs 1 through 27 above as though fully set forth herein.

29.     The third element of Verizon's claim is comprised of liabilities that Verizon incurred with a third-party vendor, MegaPath, with which Verizon contracted and committed to certain minimum terms and/or obligations in order to deliver services to WaMu in compliance with the SARA and over its entire five-year term, as a direct result of the early repudiation of the SARA as of July 1, 2009.

30.     The claim set forth in this Count III totals $196,650.00, and is supported by the summary attached as EXHIBIT H hereto and incorporated herein by reference.  The claim set forth in this Count III is further supported by copies of Verizon's work orders with MegaPath (attached as EXHIBIT I hereto and incorporated herein by reference), under which (among other agreements) Verizon has incurred these liabilities as a result of the early repudiation of the SARA.

31.     All of the components of Verizon's claim set forth in this Count III and supported by Exhibits H and I hereto are "actual direct compensatory damages" that Verizon sustained as a result of the early repudiation of the SARA, as opposed to "punitive or exemplary damages" or "damages for lost profits or opportunity" excluded from recovery under 12 U.S.C. § 1821(e)(3)(B), and as such are allowable and recoverable by Verizon pursuant to 12 U.S.C. § 1821(e)(3)(A).

WHEREFORE, Verizon prays for the following relief:

     (a)     on Count I, for an award of compensatory damages in the aggregate sum of $21,453,977.43;

     (b)     on Count II, for an award of compensatory damages in the aggregate sum of $2,832,000.00;

     (c)     on Count III, for an award of compensatory damages in the aggregate sum of $196,650.00;

     (d)     that Verizon recover accrued pre-judgment interest on the sums recoverable in Counts I through III above as permitted under applicable law;

     (e)     that Verizon recover its costs of collection and expenses of litigation, including, without limitation, its reasonable attorney's fees, as permitted under applicable law; and

     (f)     that Verizon be granted such other and further relief as the Court deems just, equitable and proper.

Dated: April ____, 2010.

Respectfully submitted,

ANDERSON & QUINN, LLC

BY: _____

Curtis B. Hane (D.C. Bar No. 453081)
Adams Law Center
25 Wood Lane
Rockville, MD 20850
(301) 762-3303 (phone)
(301) 762-3776 (fax)
chane@andersonquinn.com


ARNALL GOLDEN GREGORY LLP

BY: /s/ Darryl S. Laddin
Darryl S. Laddin (D.C. Bar No. 459169)
Frank N. White
171 17th Street NW, Suite 2100
Atlanta, Georgia  30363-1031

(404) 873-8500 (phone)
(404) 873-8121 (fax)
darryl.laddin@agg.com

Attorneys for MCI Communications Services, Inc.
d/b/a Verizon Business Services